## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA

v.

JOSE ARELLANO RODRIGUEZ,                    Case No. 4:23-cr-61

Petitioner.

### OPINION & ORDER

Jose Arellano Rodriguez filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 34. The filing alleges that the petitioner asked the attorney who represented him at sentencing to file a notice of appeal, but she did not. *Id.* at 5. The Court held a hearing on the petition and learned that in reality, the petitioner only asked his attorney whether he had the *option* to appeal. And though the petitioner was understandably disappointed with the attorney's failure to communicate with him after he was sentenced, that does not amount to ineffective assistance of counsel in the constitutional sense. Therefore, the petition will be **DENIED**.

I.    **BACKGROUND**

The petitioner pleaded guilty, without a plea agreement, to attempted possession with intent to distribute cocaine, and this Court sentenced him to 123 months of incarceration and five years of supervised release. ECF Nos. 19 (plea hearing minutes), 30 (Judgment). The petitioner was represented at his plea hearing by Attorney Lindsay McCaslin and represented at sentencing by Attorney Kirsten

Kmet. The § 2255 petition alleges Attorney Kmet was ineffective for failing to file an appeal on the petitioner's behalf.[1]

## II.    LEGAL STANDARDS

### A.    Motions to Vacate Under 28 U.S.C. § 2255

Collateral review under 28 U.S.C. § 2255 allows a person in federal custody to challenge the legality of a federal conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence that: (1) their sentence or conviction was "imposed in violation of the Constitution or laws of the United States," (2) the district court "was without jurisdiction to impose such sentence," (3) the sentence exceeds "the maximum authorized by law," or (4) the sentence or conviction is "otherwise subject to collateral attack." *Id.*

A § 2255 petition "is expected to state facts that point to a real possibility of constitutional error." *Blackledge v. Allison,* 431 U.S. 63, 75 n.7 (1977) (punctuation and citation omitted). Courts construe filings by *pro se* petitioners liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

---

[1] The petition also asserted a second ground, which stated simply: "Failure to investigate sentencing mitigators" and "[f]ailure to [a]dvise on [p]ost-[s]entencing [o]ptions," but it provided no further detail. ECF No. 34 at 6. At the hearing on the § 2255 petition, the Court dismissed Ground Two. ECF No. 43 at 4:5–5:25; *see United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (quoting R. Gov. § 2255 Proc. for U.S. Dist. Cts. 4(b)) ("If it plainly appears from the motion and any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.").

**B.    Ineffective Assistance of Counsel Claims**

The Sixth Amendment to the United States Constitution assures that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his defen[s]e." U.S. Const. amend. VI. A claim of ineffective assistance of counsel is appropriate when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial" did not "result" in a just outcome. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must establish two prongs: deficient performance and actual prejudice. *Id.* at 687. "[F]ailure of proof on either prong ends the matter." *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004).

To establish deficient performance, the petitioner "must [show] that counsel's representation fell below an objective standard of reasonableness," gauged by "prevailing professional norms." *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) (quotation marks and citation omitted); *Strickland*, 466 U.S. at 688. Review under this prong is "highly deferential," and courts strongly presume that counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *see also Kimmelman v. Morrison*, 477 U.S. 365, 381–82 (1986) (discussing *Strickland*'s "highly demanding" standard). Further, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690. It is not enough for the petitioner to make "vague and conclusory allegations [] in a § 2255 petition." *Dyess*, 730 F.3d at 359 (quotation marks and citation omitted). They must identify specific "acts or omissions of counsel that

3

are alleged not to have been the result of reasonable professional judgment," *Strickland*, 466 U.S. at 690, and "show that counsel's actions were not supported by a reasonable strategy," *Massaro v. United States*, 538 U.S. 500, 505 (2003). Only in "relatively rare situations" will a § 2255 petitioner establish that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690).

Prejudice is proved when a petitioner shows "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" of a different result exists when the error is "sufficient to undermine confidence in the outcome." *Id.* Thus, the petitioner must show that counsel's failure was "so serious as to deprive [the petitioner] of a fair trial." *Id.* at 687.

"Failure to file a requested appeal is *per se* ineffective assistance of counsel, irrespective of the possibility of success on the merits." *Strong v. Johnson*, 495 F.3d 134, 138 (4th Cir. 2007) (emphasis removed, alteration accepted); *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995).

## III.    ANALYSIS

If an attorney does not file an appeal after they are asked to do so, that makes them automatically ineffective and results in a grant of a § 2255 petition. *Strong*, 495 F.3d at 138; *Foster*, 68 F.3d at 88. So at the hearing on the § 2255 petition here, the Court's first task was to determine whether the petitioner had in fact asked Attorney

Kmet to file an appeal on his behalf. Based on the petitioner's testimony, it is clear that is not quite what happened.

The petitioner testified that he did not recall speaking with Attorney Kmet before his sentencing hearing. ECF No. 43 at 17:19–20, 18:25–19:3.[2] He explained that after the sentencing hearing ended, as he was "being escorted back to [his] holding cell" and Attorney Kmet was "walking towards the elevator doors," he asked *whether* he should file an appeal. *Id.* at 14:17–15:3.

Legally there is a big difference between being curious about whether an appeal is a good idea and directly asking your attorney to file one. At the hearing, the petitioner did not claim that he ever explicitly told Attorney Kmet he wanted to appeal or that he instructed her to file a notice of appeal on his behalf. Instead, it is clear to the Court that the petitioner wanted *advice* about whether he should file an appeal.

At the hearing on the § 2255 petition, the petitioner testified credibly that he "just wanted some information and clarity as to [his] options after the sentencing hearing, and if there was such a thing—such an option as to appeal[]." ECF No. 43 at 17:1–3. He explained that he wanted to know whether, based on "her knowledge of the laws," Attorney Kmet "recommended" filing an appeal—and whether, "if [he]

---

[2] Attorney Kmet asserted that she went to visit the petitioner at Western Tidewater Regional Jail before the sentencing hearing. ECF No. 43 at 29:6–8. The Court directed the government to provide evidence that this visit occurred, if it did. *Id.* at 36:5–37:14, 40:17–41:12. After the hearing on the § 2255 petition, the government located a visitor log that indicated Attorney Kmet visited the petitioner on February 14, 2024—six days before the sentencing hearing. ECF No. 41 at 1.

didn't have an opportunity to appeal," there were "any other options" available to him. *Id.* at 17:3–6.

The Court finds that the petitioner did not "request[]" that Attorney Kmet file an appeal on his behalf, so her failure to do so is not constitutionally ineffective *per se*—in other words, because the petitioner failed to specifically ask Attorney Kmet to file an appeal, the fact that she did not file one does not automatically wipe away the petitioner's conviction or sentence. *Strong*, 495 F.3d at 138; *Foster*, 68 F.3d at 88.

Additionally, the fact that Attorney Kmet did not follow up with the petitioner after he expressed a desire to talk about whether appealing was an 'option' does not entitle the petitioner to a do-over either. On this point, the Court considers (1) whether Attorney Kmet's representation was objectively unreasonable, based on what is normal for defense attorneys, *Wiggins,* 539 U.S. at 521; *Strickland*, 466 U.S. at 688; and (2) whether filing an appeal would probably have changed the outcome for the petitioner. *Strickland*, 466 U.S. at 687.

Not going to the jail to speak with a client who has questions after sentencing is certainly not ideal representation, and the Court understands why that experience was frustrating for the petitioner. However, because the petitioner did not express a specific question that required a response, Attorney Kmet's failure to follow up is within the range of constitutionally acceptable behavior.[3] And regardless, the Court

---

[3] The petitioner testified that while he was still at Western Tidewater Regional Jail, he "tried calling [Attorney Kmet's] office a few times after the sentencing hearing [but] was unable to get in touch with her." ECF No. 43 at 16:21–23, 35:25–36:4. A log of the petitioner's outgoing calls during that time period show that he did not place a

cannot conclude that filing an appeal would have resulted in any change in the petitioner's conviction or sentence, because the basis for appeal that the petitioner was curious about would not have been successful.

The Court asked the petitioner what the basis for his appeal would have been, if he had filed one. Given the opportunity at the § 2255 hearing, the petitioner did not identify any problem with the indictment, plea, or sentencing that he wished to appeal. *See* ECF No. 43 at 17:8–16. Therefore, the Court cannot conclude that an appeal would have changed the outcome of the case.

However, the petitioner explained that he "read something about . . . the First Step Act" and "about some amendment that was passed on November 1st of 2023." ECF No. 43 at 17:11–13. Based on what he read, the petitioner wondered whether he might be subject to a mandatory minimum sentence of five years, instead of ten years. *Id.* at 17:13–15.

If either of those concerns were the basis for the appeal the defendant wanted to explore, then the appeal would not have succeeded. But the Court is sympathetic to the petitioner's desire for "closure," so it will explain the laws he was wondering about and why they would not change the outcome in his case. ECF No. 43 at 17:7, 20:3.

---

call to Attorney Kmet's office. ECF No. 41-1 (call log); *see* ECF No. 41 at 2 (explaining numbers at the office of the Federal Public Defender have a 457 prefix).

It seems like the petitioner read about two separate things: (1) a sentencing guidelines amendment that took effect on November 1, 2023, and (2) the First Step Act. The Court will explain both.

**A.    Sentencing Guidelines Amendment**

The United States Sentencing Commission's Amendment 821, which took effect on November 1, 2023, did two main things: (1) it eliminated "status points" for individuals with six or fewer criminal history points, *compare* U.S.S.G. § 4A1.1(e) (2023) with U.S.S.G. § 4A1.1(d) (2022); and (2) it allowed for a two-level reduction in the total offense level for people with zero criminal history points, *see* U.S.S.G. § 4C1.1. Those changes can result in a lower sentencing guidelines range for some people.

Amendment 821 is retroactive, meaning if a person was sentenced before the amendment took effect, they can ask a court to go back and adjust their sentencing guidelines and reduce their sentence, if the new rules would have affected them. U.S.S.G. § 1Bl.10 cmt. n. 7. That is why the petitioner may have heard of people having their sentences reduced based on Amendment 821: Some people who were sentenced *before* November 1, 2023, are entitled to a reduction, to bring their sentences in line with the current guidelines.

Amendment 821 does not affect the petitioner's sentence for two reasons: (1) The petitioner was sentenced *after* November 1, 2023, when the amendment was already in effect, so the Court considered the new rules when determining his sentence, not the old ones. And (2) the petitioner had nine criminal history points, so

neither of the amendment's changes would have affected his sentencing guidelines. *See* ECF No. 23 ¶ 37.

### B.    The First Step Act

In 2010, Congress passed the Fair Sentencing Act, which raised the amount of cocaine base required to trigger mandatory minimum sentences for certain crimes, including possession with intent to distribute cocaine. Pub. L. No. 111–220, 124 Stat. 2372 (amending 21 U.S.C. § 841). Then in 2018, the First Step Act was passed, enabling courts to reduce the sentence of a person sentenced *before* the Fair Sentencing Act took effect, to bring their sentence in line with the new law. Pub. L. No. 115–391, § 404(b), 132 Stat. 5194, 5222 (2018). So the First Step Act has enabled some people convicted of drug crimes *before the Fair Sentencing Act* to receive reduced sentences.

Again, there are two reasons the First Step Act does not affect the petitioner's case: (1) Just like Amendment 821, described above, this part of the First Step Act only results in reduced sentences for people who were sentenced before 2010. People sentenced after 2010 already get the benefit of the higher threshold for mandatory minimums the Fair Sentencing Act provided. Since the petitioner was sentenced in 2023, his sentence currently reflects the correct mandatory minimum for possession with intent to distribute cocaine. Therefore, a request for a sentence reduction based on the First Step Act would not change his sentence.

And (2) the quantity of cocaine the petitioner pleaded guilty to possessing (67.1 kilograms of cocaine, ECF No. 23 ¶ 5.1) is high enough to trigger the 10-year

mandatory minimum sentence under the *new* scheme, which has been in effect since 2010. *See* 21 U.S.C. § 841(b)(1)(A).

The Court also wishes to clarify one additional point that applies to both of the matters the petitioner was curious about. Both Amendment 821 and the First Step Act enable a court to reduce a person's sentence based on an update to the rules. The mechanism for asking for a sentence reduction like that is called a 'motion for a sentence reduction.' An 'appeal' is something different. An 'appeal' is a request for a higher court to review something the sentencing court did, because a defendant believes it was illegal. Here, the petitioner expressed an interest in two rules that he hoped might have been grounds for a reduced sentence, but he did not mention anything that would be grounds for an 'appeal.' For that additional reason, the Court finds that Attorney Kmet's failure to file an appeal on the petitioner's behalf or to follow up on his questions did not constitute ineffective assistance of counsel within the meaning of the Sixth Amendment.

## IV.   CERTIFICATE OF APPEALABILITY

The Court's final step in considering the § 2255 petition is to decide whether to permit the petitioner to appeal *the decision to deny the petition*. (This is different from allowing the petitioner to appeal the conviction or sentence in the underlying case.)

"An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA")." *United States v. Day*, No. 3:07-cr-154, 2018 WL 4714778, at *2 (E.D. Va. Oct. 1, 2018) (citing 28 U.S.C. § 2253(c)(1)(B)); *see* R. Gov. § 2255 Proc. in U.S. Dist. Cts. 11(a). A "COA will not issue

10

unless a prisoner makes a substantial showing of the denial of a constitutional right." *Day*, 2018 WL 4714778, at *2 (quotation marks and citation omitted); 28 U.S.C. § 2253(c)(2). Such a showing turns on whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks and citation omitted). The Court finds that the petitioner has not met this standard. Accordingly, a certificate of appealability will be denied.

In other words, the Court has concluded that the petitioner does not get to go back and file an appeal in his original case, because he did not show that Attorney Kmet was constitutionally ineffective. The Court also concludes that the petitioner cannot appeal *the decision to deny his § 2255 petition*. If the petitioner wants to appeal the denial of his § 2255 petition, he must first ask the United States Court of Appeals for the Fourth Circuit to grant him a certificate of appealability. Instructions on how to do that are provided below.

## V.    CONCLUSION

Jose Arellano Rodriguez's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 34) is **DENIED**.

Because the petitioner failed to demonstrate a substantial showing of a denial of a constitutional right, a certificate of appealability as to the Court's decision on the § 2255 petition is **DENIED.**

11

The petitioner is **ADVISED** that because this Court declines to issue a certificate of appealability as to the Court's decision on the § 2255 petition, the petitioner must first request a certificate of appealability from the Circuit Court if he wishes to file an appeal of this decision. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

The petitioner is **FURTHER ADVISED** that if he wishes to appeal the decision on his § 2255 petition, he must file a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510, within 30 days of the date of this Opinion and Order. A written notice of appeal is a short statement declaring a desire to appeal and noting the date of the Order petitioner wants to appeal. The petitioner does not need to explain the grounds for appeal of this decision until the Circuit Court directs him to do so.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to the petitioner, Kirsten Kmet, Esq., and counsel of record for the government.

**IT IS SO ORDERED**.

_____ /s/ _____

Jamar K. Walker
United States District Judge

Newport News, Virginia
December 3, 2025